IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| PRESIDENTIAL FACILITY, LLC | : CIVIL ACTION |
| v. | : |
| | : NO. 14-7076 |
| GREGORY S. CAMPBELL, et al. | : |

### MEMORANDUM

**KEARNEY, J.**                                                                                          **MARCH 16, 2015**

Judgment creditors typically pursue every available avenue of collection from the judgment debtor, often attempting to gather assets from non-debtor third parties with a close legal relationship to the debtor. Here, we review a judgment creditor's strategy of "reverse veil piercing". Under "reverse veil piercing", the creditor attempts to access assets of non-debtor entities arguing that the non-debtor entity and debtor are so closely related economically that this Court, in an exercise of its equity, may allow the creditor to pierce through the non-debtor entity veil to access its assets to pay an individual debtor's judgment. All agree this exercise of equity must, *ab initio*, follow the pleading of a plausible claim that the debtor and entities affiliated with him are so closely related economically that it is inequitable to allow the debtor to shelter and avoid the judgment while enjoying the fruits of the entity's efforts.

Here, after years of post-judgment execution efforts, the creditor plaintiff has not plead facts showing an entitlement to this extraordinary exercise of equitable "reverse veil piercing". Further, the creditor waited too long to pursue a fraudulent conveyance claim arising from a stock transfer in March 2008. As such, the Defendants' motion to dismiss is granted with limited leave, mindful of Rule 11, to amend as to facts warranting reverse veil piercing under Counts I, II, IV and V.

## I. FACTS PLEAD IN COMPLAINT[1]

In July 2008, Plaintiff Presidential Facility LLC ("Presidential") agreed to unconditionally guarantee $13 million of a bank loan to a non-party. (Complaint, ECF Doc. No. 1, ¶12). At some unknown time around the same date of Presidential's bank guaranty, Defendant Gregory S. Campbell ("Mr. Campbell") agreed to guarantee payment of any amount paid by the Presidential to the bank in excess of $3 million. (*Id.* at ¶13).

---

[1] To survive a motion to dismiss, a complaint must "set out sufficient factual matter to show that the claim is facially plausible." *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009). "Conclusory or 'bare-bones' allegations . . . do not suffice." *Id.* As the Court in *Fowler* explained, when assessing the plausibility of allegations in a complaint:

> First, the factual and legal elements of a claim should be separated. The District Court must accept all of the complaint's well-pleaded facts as true, but may disregard any legal conclusions. Second, a District Court must then determine whether the facts alleged in the complaint are sufficient to show that the plaintiff has a 'plausible claim for relief.' In other words, a complaint must do more than allege the plaintiff's entitlement to relief. A complaint has to 'show' such an entitlement with its facts. ... This plausibility determination will be 'a context-specific task that requires the reviewing court to draw on its judicial experience and common sense.'

*Id.*, 578 F.3d at 210-11, citing *Ashcroft v. Iqbal,* 556 U.S. 662 (May 18, 2009)(internal citations omitted).

Case 2:14-cv-07076-MAK Document 27 Filed 03/16/15 Page 3 of 7

### Facts concerning Mr. Campbell's Judgment

The borrower apparently defaulted at some point and Presidential paid its guarantee. (*Id.* at ¶16). In turn, on June 4, 2009, Presidential demanded that Mr. Campbell satisfy his guarantee to it. (*Id.* at ¶17). On June 17, 2009, Presidential filed an action in the United States District Court for the Eastern District of Michigan against Mr. Campbell. (*Id.* at ¶19). Approximately three years later, on May 16, 2012, the Eastern District of Michigan entered judgment in favor of Presidential and against Mr. Campbell for $9,500,000 ("Judgment"). (*Id.* at ¶20). Plaintiff deposed Mr. Campbell on his assets in October 2012. (*Id.* at ¶27). In 2014, Plaintiff transferred the Judgment to this Court at No. 14-0263. (*Id.* at ¶22). Mr. Campbell has not paid any portion of the Judgment. (*Id.* at ¶23).

### Facts concerning Defendant Campbell Partners and Diane Campbell

Mr. Campbell and his son formed an entity in 2001 later known as Campbell Partners. (*Id.* at ¶¶58-59, ¶65). At some point, the predecessor to Campbell Partners was known as Chester County Aviation. *Id.* In March 2008, Mr. Campbell transferred all of his ownership interest in Chester County Aviation to his wife, Defendant Diane Campbell, for allegedly no consideration. (*Id.* at ¶63). He testified that his estate planning advisors suggested he move assets into his wife's name. (*Id.* at ¶64). Mr. Campbell is the Chairman of Campbell Partners but he has no ownership interest. (*Id.* at ¶67).

### Facts concerning Defendant CDV Capital LLC and LP

From 1996 until sometime in early 2009, Mr. Campbell was a business partner/member in three businesses which included the name "CDV". (*Id.* at ¶24). In February 2009, Mr. Campbell formed CDV Capital LLC ("CDV LLC"). (*Id.* at ¶31). Defendant Diane Campbell

3

is the sole member of CDV LLC. (*Id.* at ¶32). Mr. Campbell placed ownership of this company in his wife's name because he did not want to create "value in an entity that I owned, basically, and I wasn't intending to work any further. There didn't seem to be a lot of reason for me to work given that my money was all going to go to creditors." (*Id.* at ¶34). Mr. Campbell testified that his sole source of income is his wife and that Diane Campbell's only source of income is CDV LLC. (*Id.* at ¶35). Mr. Campbell is the President and remains significantly involved in the business development of CDV LLC. (*Id.* at ¶¶ 33, 38). Presidential alleges that CDV Capital is trading off of Mr. Campbell's experience and good will. (*Id.* at ¶41). In June 2010, Mr. Campbell was among the persons forming Defendant CDV Capital Partners, LP ("CDV LP"). (*Id.* at ¶54). CDV LLC is the general partner of CDV LP. (*Id.* at ¶55).

Presidential now brings suit in this Court seeking to have entities allegedly affiliated with Mr. Campbell pay the Judgment. Specifically, Presidential seeks to "reverse veil pierce" as to Defendants CDV LP, CDV LLC and Campbell Partners (the former Chester County Aviation) (Counts I and II). Presidential also claims fraudulent conveyance arising from the pre-guaranty transfer of Mr. Campbell's ownership interest in Campbell Partners to his wife without consideration (Count III). Presidential also alleges civil conspiracy and punitive damages (Counts IV and V).

## II. ANALYSIS

### A. Plaintiff fails to plead facts giving rise to a plausible claim for reverse veil piercing.

After securing the Judgment and taking execution discovery but as yet not fully paid, Plaintiff now seeks the exceptional remedy of reverse veil piercing. This equitable remedy allows a creditor to access assets of a non-debtor entity to satisfy debts of an alleged entity insider because the entity and the individual are considered one and the same. *In re Blatstein,*

4

192 F.3d 88, 100 (3d Cir. 1999). Even with the requisite factual showing that the debtor individual and non-debtor entity are so closely intertwined so as to be essentially one economic being, we may only do so to prevent fraud, illegality, injustice or a contravention of public policy. *Id.*

In *Blatstein*, our Court of Appeals reviewed a district court opinion from the Middle District of Pennsylvania as an exemplar of <u>facts</u> necessary to reverse pierce. *In re Mass*, 178 B.R. 626 (M.D. 1995). In *Mass*, the court upheld the reverse veil piercing after finding facts plead and shown that "…there was a total failure to observe any corporate formalities by the debtors; there were no directors' or shareholders' meetings and no dividends were paid; there were no corporate records; no corporate tax records were maintained; the business premises were not leased to the corporation; and at no time was the…business conducted as a corporate entity. At all times the debtors used the proceeds of the business as if they were assets of the individual debtors themselves." *Id.*, 178 B.R. at 630. In *Mass*, the debtors changed a personal business account into a corporate account but continued to exclusively use that account for personal expenses. *Id.* at 628.

By comparison, in *Blatstein*, the judgment debtors did not run their corporations as strictly separate entities, but they did effectively uphold the corporate forms by having the corporations keep separate records and bank accounts and entering on the books all loans the corporations made to each other and its shareholders. The court found that the debtor did not hide any of his personal assets in the corporation, nor did he commingle his assets with the corporation's assets so that separation would be impossible. *Blatstein*, 192 F.3d at 101. Further, the District Court in *Blatstein*, as affirmed by the Court of Appeals, found that the assets were corporate assets and not part of the debtors' personal accounts.

Here, there is no allegation close to the facts in *Mass.* As to Campbell Partners, Presidential alleges that Mr. Campbell transferred his fifty percent ownership interest to his wife several months <u>before</u> his July 2008 guarantee. There is no showing that Campbell Partners is, in any way, the same economic being as Mr. or Mrs. Campbell's personal bank accounts. Moreover, as this transaction occurred before the guaranty at issue, it is difficult to discern how this alleged transaction, presumably known to Presidential before it accepted Mr. Campbell's guaranty, could be the basis for any claim based on reliance.

As to the CDV entities, Presidential alleges that the sole owner of CDV LLC is Diane Campbell; Mr. Campbell is CDV LLC's President; Diane Campbell is its sole owner because Mr. Campbell had issues with creditors and it did not make a lot of sense for him to be creating a value in an entity given that all of his money was going to go to the creditors; Diane Campbell's only source of income is CDV LLC; and, Mr. Campbell essentially works for free as the president of this entity owned by his wife. Again, Presidential does not allege a fact that comes close to exceptional circumstances required to warrant reverse view piercing. Absent facts closer to the analysis in *Mass*, there is no plausible claim for relief for a reverse piercing of the corporate veils of Campbell Partners, CDV LLC or CDV LP.

**B. Presidential's fraudulent conveyance claim is barred by the statute of limitations.**

Plaintiff alleges that the March 2008 transfer of Mr. Campbell's fifty percent ownership interest in Chester County Aviation Holdings (now known as Campbell Partners) for no consideration constitutes a fraudulent conveyance under Pennsylvania's Uniform Fraudulent Transfer Act ("Act"), 12 Pa. C.S.A. § 5104. This claim, however, is barred as a cause of action for fraudulent transfer must be commenced within either four (4) years after the transfer was made or the obligation incurred or, if later, within one (1) year after the transfer was or could have reasonably been discovered by the claimant. 12 Pa. C.S.A. §5109.

As Presidential swore, Mr. Campbell transferred his interest in Campbell Partners to Diane Campbell in March 2008, several months before entering into the July 2008 guarantee forming the basis of the Judgment. This March 2008 transfer is well over a year before Mr. Campbell's default on his guaranty, and was made before Presidential made the credit decision to accept Mr. Campbell's June 2008 guaranty. Under any interpretation of the Act's statute of limitations, this claim is barred: the transfer occurred in March 2008 and the obligation was incurred in July 2008. *K-B Building Co. v. Sheesley Construction, Inc.*, 833 A.2d 1132, 1136 (Pa.Super.Ct. 2003). Plaintiff's citations to inapposite cases that do not rely on the Act are unavailing. This fraudulent conveyance claim was required to be brought long before the filing of this Complaint on December 15, 2014. As such, this claim is DISMISSED with Prejudice.

### C. **Presidential may file an Amended Complaint.**

Presidential is given leave to amend if, consistent with its obligations under Rule 11 and Rules of Professional Conduct, it can plead facts that can give rise to a plausible claim for reverse piercing mindful of *Blatstein*. Plaintiff may amend the Complaint on or before **March 30, 2015**.

### III. CONCLUSION

Presidential has not sufficiently plead facts to move forward against non-debtor entities affiliated with Mr. Campbell. Presidential holds the multi-million dollar Judgment and has taken Mr. Campbell's execution deposition. Mr. Campbell is obligated to pay the Judgment. Presidential is legally entitled to be paid on the Judgment, but cannot presently pursue the named non-debtor parties based on the facts plead to date.